## No. 19,907.

ARMOUR AND COMPANY *v.* INDUSTRIAL COMMISSION OF COLORADO AND MARTHA J. VASQUEZ.

(368 P. [2d] 798)

Decided February 13, 1962.

Messrs. HOLME, ROBERTS, MORE & OWEN, Mr. DONALD C. MCKINLEY, Mr. RICHARD L. SCHREPFERMAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

WE will refer to the plaintiff in error, Armour and Company, a self-insurer, as employer and to defendant in error as the Commission. The claimant will be referred to as such. When both the Commission and claimant are mentioned jointly we shall refer to them as the defendants in error.

Writ of error is directed to a judgment of the district court affirming the findings and award of the Commission in a proceeding arising under the Workmen's Compensation Act. The essential question for determination is whether the Commission exceeded its powers in excusing claimant's failure to file a compensation claim within six months after the injury, as provided in C.R.S. '53, 81-13-5.

The pertinent facts are as follows:

On July 30, 1958, claimant, while on her way to punch her time card at the end of the day's work, slipped on a stairway at her place of employment. At the time of

the fall claimant states that she experienced pain in her knee, elbow and left hip; however, the employer's records show she only complained at the time about her elbow. In any event, the next day, July 31, 1958, the claimant reported the injury to her employer. The employer's personnel director duly filed a report of the accident with the Industrial Commission and administered first aid in the form of electric stimulation to claimant's elbow. Whether first aid was also administered to claimant's knee was disputed in the hearing before the referee. The personnel director also advised claimant at the time to see a doctor and to advise the employer if her pain or any results persisted. Claimant continued working and now asserts that she had pain in her left hip from the beginning, which pain continued to increase. Finally in November 1958 claimant, without further report to her employer, consulted a Dr. Momii. According to claimant's own testimony Dr. Momii gave her pills to relieve the pain and recommended that x-rays be taken. However, claimant neglected to do so because, as she testified, she didn't have the time. Claimant continued to work until June 5, 1959, when she was forced to quit because of the condition of her left hip. On June 8, 1959, Dr. Momii took x-rays and immediately made arrangements for claimant's hospitalization. Her condition was diagnosed as osteoarthritis of the left hip with temporary total disability.

On December 1, 1959, some sixteen months after the accident on July 30, 1958, claimant filed a claim for compensation with the Industrial Commission. Hearing was held before a referee and it was determined that claimant had suffered an accident arising out of and in the course of employment and was temporarily and totally disabled. A weekly rate of compensation was accordingly awarded claimant.

The referee expressly found that there was ample reason and excuse for claimant's failure to file her claim

within six months after the injury on July 30, 1958, and that the employer was not prejudiced by the late filing. The Industrial Commission affirmed the order of the referee, and adopted his findings of fact and award. Upon employer's filing of a complaint in the district court to set aside the award, the findings of fact and award of the Commission were affirmed and motion for a new trial was dispensed with.

The employer urges reversal on the ground that the Commission acted in excess of its powers in finding that the claim for compensation was not barred by the former six months statute of limitations set forth in C.R.S. '53, 81-13-5. This provides in pertinent part as follows:

"The commission shall have jurisdiction at all times to hear and determine and make findings and awards on all cases of injury for which compensation or benefits are provided in this chapter. The right to compensation and benefits, as provided by this chapter, shall be barred unless within six months after the injury or within one year after death resulting therefrom, a notice claiming compensation shall be filed with the commission. This limitation shall not apply to any claimant to whom compensation has been paid, or where it is established to the satisfaction of the commission within two years after the injury or death *that a reasonable excuse exists for the failure to file such notice claiming compensation, and the employer's rights have not been prejudiced thereby,* and the furnishing of medical, surgical or hospital treatment by the employer shall not be considered payment of compensation or benefits within the meaning of this section." (Emphasis supplied.)

We observe that the statute has two prerequisites before this claim could be validly filed and allowed, viz.: (1) there must be a reasonable excuse (which means a legal excuse not just any reason); and (2) the employer must not be prejudiced by the filing and allowance of the claim.

■ In considering the issues presented we must begin with the long recognized premise that the Commission is vested with broad discretion in determining what facts constitute a reasonable excuse. In addition we must recognize that the prejudice to the employer must be actual and must be shown to be so. See *Ind. Com. of Colo., et al v. Newton Lumber & Manufacturing Company, et al,* 135 Colo. 594, 314 P. (2d) 296 (1957). The defendants in error rely principally on *Newton* as well as on two other Colorado cases, viz., *Employers' Casualty Co. v. Ind. Com.,* 133 Colo. 536, 297 P. (2d) 887 (1956) and *C.F.&I. Corp. v. Ind. Com., et al,* 129 Colo. 287, 269 P. (2d) 696 (1954) to sustain their position that the Commission had *carte blanche* discretion, that a valid excuse existed, and that there was no prejudice to the employer.

None of these three cases can govern the present action. In *Newton* the facts are materially different in important particulars. For example, there the employer not only knew of the original accident and filed its notices accordingly, but it also knew its employee was hospitalized and one of its agents visited him there, and, it knew who the medical attendants were and when the employee left the hospital. Both reasonable excuse and lack of prejudice were held proper in *Newton*. In the *Employers' Casualty* case the trial court's action was upheld without written opinion so no opinion exists to guide us now. In the *C.F.&I.* case the employer was held to have misled a widow claimant by its answers to her questions about filing a claim; the employer indicating it had no insurance but omitting to say it was self-insured. We there upheld her excuse for her late filing when she found out the truth.

A more recent case decided after the briefs were filed in the present action, and one more in point is *Monks Excavating & Redi-Mix Cement v. Kopsa,* 148 Colo. 586 367 P. (2d) 321 (1961). Actually *Monks* is not as strong

a case for the employer (who was successful there) as the one now before us because in *Monks* after the employee was knocked down by a drag line neither he nor his employer thought he was injured, thus no report was filed by the employer and presumably no notice was given the employee by the Commission about filing his claim. Here both the employer and employee knew she had suffered an accident and the proper report was filed. This claimant neglected to file her claim within the six months period and did not report to her employer that she was having any further trouble. In *Monks* we held in effect that there is a difference between a claimant's reasons for a delayed filing and legally excusable reasons for so failing to act.

In the instant case the referee's supplemental order of April 27, 1960, makes several findings which are inconsistent or unsupported by this record: For example, claimant's neglect to have x-rays taken was found to be "due to lack of funds" when she testified it was due to her not wanting to take the time; that "The claimant admitted that she did fall in the street but that it was three years ago" (which was before the accident complained of here, and what she told at least one doctor). This was preceded by a paragraph about her street fall witnessed by another employee and the referee's statement that though she said she fell three years ago she also "said it could have been in November 1958." The order also states there is no medical evidence "that nothing more could have been done than has been done to minimize the after effects of said fall," whereas there is competent medical testimony to the contrary. Then the referee characterized the personnel director's first aid to claimant as a failure on the part of the employer to tender adequate medical attention, stating that the employer thereby minimized the consequences flowing from the accident. Further, he ruled that the injury was superficial but "the employer knew or should have known through use of ordinary diligence that more

frightful consequences might flow from the occurrence than those appearing on the surface." All this the referee concluded constituted a reasonable excuse in that "the claimant relied upon inexpert medical advice to her detriment but filed her claim when medical evidence disclosed the error."

As pointed out above the record does not support these findings even to the point that claimant filed her claim when "medical evidence disclosed the error." For she obviously had disability when she first consulted Dr. Momii before the six months period expired.

Far from being lulled into a sense of painless security by the actions of the personnel director, as the referee found, the record discloses voluminous testimony that claimant herself testified that she experienced increasing pain in her hip shortly after the accident and was put on notice as an ordinary and prudent person to advise her employer and to protect her rights.

■ The fact that claimant did not desire to take the time in November 1958 to have x-rays taken which would have indicated the nature of her ailment, if considered the "reason" for her late filing, was legally insufficient. Not all reasons constitute legally justifiable excuses within the purview of C.R.S. '53, 81-13-5. This must be so, otherwise the limitation provisions of the statute would be rendered nugatory. Since the record discloses no legal excuse for the late filing, it follows that in finding to the contrary the Commission abused its discretion.

We turn next to the question as to whether the employer was prejudiced by the delay in filing.

■ The employer asserts it was put to a great disadvantage by claimant's late filing. It urges that it was more difficult to estimate the extent of disability, if any, due to the July 1958 accident, due to claimant's prior fall, and to the long period of time that elapsed from the last accident until it could have claimant examined and treated. Also, that the degenerative process

was allowed by claimant to progress to a serious stage, which a prompt diagnosis and treatment could have prevented. This distinguishes the case from *Newton,* supra, where the employer knew what was wrong and could take steps to protect itself. This record discloses that the employer, if the award is sustained, will have to assume a greater obligation than would have been the case had claimant filed her claim within the statutory six months. For if she had so filed it would have afforded the employer the opportunity to examine and treat her with the probability of limiting or eliminating her disability. To say that no prejudice results to the employer under such a state of facts is to distort the meaning of the statutory phrase used.

In summary we conclude that the evidence in this record is insufficient as a matter of law to sustain the Commission's suspension of the six months' limitation provision of C.R.S. '53, 81-13-5. In finding otherwise the Commission abused its discretion.

The judgment is accordingly reversed.

MR. CHIEF JUSTICE DAY and MR. JUSTICE HALL concur.